IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FARIECE ALTICE | * | |
|    Plaintiff | * | |
| v. | * | Civil Action No.: DKC 06-949 |
| AMF BOWLING CENTERS, INC., et al. | * | |
|    Defendants | * | |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**COMES NOW** the Plaintiff, Fariece Altice, by and through counsel, for purposes of opposing the defendant's Motion for Summary Judgment. As reasons therefore, plaintiff respectfully refers the Court to the attached Memorandum of Points and Authorities.

Respectfully submitted,

**ASHCRAFT & GEREL, LLP**

William F. Mulroney, #04917
10 East Baltimore Street, Suite 1212
Baltimore, Maryland 21202
(410) 539-1122

Attorneys for Plaintiff, Fariece Altice

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 1st day of February, 2007, a copy of Plaintiff's Opposition to Defendant's Motion for Summary Judgment was electronically filed, with notice mailed, by first class, postage prepaid, to: Kevin Karpinski and Thomas S. Bouchelle, Esq., Karpinski, Colaresi & Karp, 120 E. Baltimore Street, Suite 1850, Baltimore, Maryland 21202, Attorney for Defendant.

/s/ William F. Mulroney
William F. Mulroney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FARIECE ALTICE | * | |
|    Plaintiff | * | |
| v. | * | Civil Action No.: DKC 06-949 |
| AMF BOWLING CENTERS, INC., et al. | * | |
|    Defendants | * | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE PLAINTIFF'S OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT

The facts of this case show without a doubt that on the morning in question Plaintiff was a business invitee of the Defendant. She was a member of a bowling league that was to conduct a league event at the AMF Bowling Center in Marlo Heights, Maryland. As an invitee, the Plaintiff was owed a duty by Defendant to use reasonable care to see that those portions of the property that the invitee may be expected to use are safe. MPJI - Cv 23:3 (4th Ed. 2005). The owner owes business invitees a duty to exercise reasonable and ordinary care to protect against known or should be known dangers. *Pahanish v. Western Trails, Inc.*, 69 Md. App. 342, 517 A.2d 1122 (1986).

    1.    During the early morning hours prior to the accident, and before the defendant's doors were opened for business, a lane machine was utilized by one of defendant's employees to clean and oil each of the establishments's 40 bowling lanes.

    In this case, the propensity of the oiling machine to leak or drip oil onto the bowler's side of the foul line was a known and acknowledged hazard by both of the defendant's employees who had responsibilities for the lane machine. Miguel Mejia, the mechanic assigned to maintain the lane machine, gave this testimony:

> Q. ... The last witness indicated that the lane machine had to be maneuvered by hand at the end of its completion to the next lane over?
>
> A. Yes it does.
>
> Q. Have there been occasions where in that process, either soap or oil has leaked from the machine into the area where the bowlers walk or approach the alley to release their ball?
>
> A. Not in ...
>
> Q. The question is has it ever happened?
>
> A. Yes, it has happened, yes obviously it has happened.
>
> Exhibit A, deposition of Miguel Mejia, at p. 12.

The defendant's employee, Ahmad Haleem, whose job it is to actually clean and oil the lanes with the lane machine in the early morning hours of each day agreed, that oil sometimes leaks from the machine as it is moved from one lane to another into the bowlers' approach area, on the bowler's side of the foul line.

> Q. So my question is does oil ever leak onto the bowlers' side of the line?
>
> A. It could happen. It could happen, yes.
>
> Q. Have you seen it happen?
>
> A. Oh, yeah, because the approach has to – see, that's another thing, when you finish with the lanes, then you finish with the lane machine, then the approach has to be cleaned.
>
> Q. Who does that?
>
> A. Me.
>
> Q. You do that?

A. Yeah. You have to clean it, ... that means you have to clean the approach and make sure the approach is clean because this is essential, because people have bowling shoes on and they're going to slide, so if they're going t slide, you got to make sure the approach is clean.

Defendant's Exhibit No. 1, at p. 35-36.

Q. And how do you sweep, what do you do, used just an ordinary broom. . . what device do you use to collect dirt?

A. Then have to to – then I use a – I have a long dust mop, and we take that dust mop and you dust down the whole approach with that dust mop.

That's why you make sure that the approach is clean, because you have to take that– you have a long mop, and it's about as long as from here to here, and you take that and you start at the– right at [lane] 40, which is generally where I am, you go down and turn around and come back like that.

Also, I have a pad that has steel wool on it and I keep it under my right foot, okay, then any time as I'm dusting down the mark, if any marks or anything is on there, I need to get them up, you know, like shoe marks. Okay.

Q. And you clean it all up with a wide mop?

A. Right– no. This is a dry mop.

Q. A dry mop?

A. Dry dust mop that you get all of this up with because you take – it all cling to the mop. Right.

Employer's Exhibit No. 1, at 42-43.

Asked about the color and texture of the lane oil, Mr. Haleem testified as follows:

Q. Now after you . . . after the machine finishes the tenth lane, then you refill oil?

> A. Yes.
>
> Q. What kind oil?
>
> A. It's an AMF product. It's greasy like. I'll tell you what, because I know you know what castor oil is.
>
> Q. Yes.
>
> A. Well, it looks like castor oil and it has the same kind of feeling.
>
> Q. And– all right. And when it's applied to the lanes, is it clear?
>
> A. Yes, it's clear . . .

2. Thus, the defendant acknowledges that it is a necessary to carefully clean the bowlers' approach area before the start of business each day in order to protect its invitee's from hazards created by dripping oil from the lane machines as well as from dirt, gum and other hazards present from the previous day's bowlers.

3. The plaintiff Fariece Altice was at the time of this accident on November 14, 2004 a very experienced bowler, having started bowling in 1969. Defendant's Exhibit No. 2, at p. 10. The year of the accident she routinely bowled twice per week. Exhibit No. 2, at p. 11. She wore her own bowling shoes, and <u>she was the very first bowler</u> on lane 24, the scene of the accident, on the morning of November 15, 2004. The defendant assigned her team lanes 23 and 24 on which to bowl. She had <u>never</u> before fallen while releasing a bowling ball in all her years of bowling. She was the first bowler to bowl on lanes 23 and 24. She bowled lane 23 without incident, then went to lane 24. She fell just as she was releasing her ball on her first ball on lane 24. Exhibit No. 2, at pp. 16-20. She went in the air backwards and fell on her right side. After she fell, she felt a slippery substance she took to be oil on the bowlers' approach side of the foul line. Exhibit No. 2, at pp. 25-26. Her body lay entirely in the bowler's approach area, before the foul line.

4. Linda Silver, an eyewitness, went over to the plaintiff after her fall, and put her hand on the floor next to the plaintiff's head (on the approach area before the foul line), in order to speak to the plaintiff, who wasn't moving or responding. She put her hand flat on the approach lane, and that's when she felt a film of grease on her hand. Defendant Exhibit No. 3, at pp. 17-20. The substance was slippery, and Ms. Silver concluded it was oil. P. 20. The oil was on the approach lane, and behind the plaintiff's head. P. 21. The plaintiff lay diagonally entirely in the bowler's approach area, before the foul line. P. 2. Ms. Silver subsequently went to the ladies' bathroom to wash the greasy substance off her hand.

Ms. Silver said an ambulance was called, and an employee of defendant came in with a dry mop to mop around the area where plaintiff was lying <u>before</u> the paramedics moved her. pp. 21-22. This was done so the paramedics would not slip or fall. Defendant Exhibit No. 3, pp. 21-22.

5. Under the circumstances, a fact finder could reasonably infer that the defendant was negligent in preparing the lanes for its invitee bowlers on the morning of the accident. If the proper protocol had been followed, any excess oil leaked from the lane machine would have been removed. The fact that the very first bowler of the day, on her very first ball on lane 24, had her feet go out from under her and fell, and that both she and Ms. Silver felt an oily substance on the bowlers' approach that matches the description of lane oil given by the defendant's employee, Ahmad Haleem, creates a inference that the approach area to lane 24 was negligently prepared for the bowlers that day, and that defendant created the condition that caused plaintiff's broken ankle.

6. "*Res ipsa loquitor*, a rule of evidence, is merely a short way of saying that the circumstances attendant upon an accident are themselves of such a character as to justify a jury in inferring negligence as the cause of that accident." *Norris v. Ross Stores, Inc.*, 159 Md. App. 323,

329, 859 A.2d.266, 270 (2004). "The purpose of *res ipsa...* is to afford a plaintiff the opportunity to present a *prima facie* case when direct evidence of the cause of an accident is not available or is available solely to the defendant." *Holzhauer v. Saks & Co.*, 346 Md. 328, 334, 697 A.2d. 89, 92 (1996).

"In order to rely successfully upon the doctrine of *res ipsa loquitor*, a plaintiff must prove: (1) a casualty of a kind that does not ordinarily occur absent negligence, (2) that was caused by an instrumentality exclusively in the defendant's control, and (3) that was not caused by an act or omission of the plaintiff." *Norris* at 33, 859 A.2d at 270-271. "If the plaintiff presents evidence as to each of these conditions, and if the jury finds each condition to be more probable than not, the jury may find negligence even in the absence of evidence as to the exact mechanism of injury or the precise manner in which the defendant was negligent." *Tucker v. University Specialty Hospital*, 166 Md.App. 50, 887 A.2d 74, 79 (2005).

"Thus, the central question involved in the use of the *res ipsa loquitor* doctrine is whether, by relying on common sense and experience, the incident more probably resulted from the defendant's negligence rather than from some other cause." *Norris*, at 331, 859 A.2d at 271. Therefore, when, through any instrumentality or agency under the control of a defendant or his servants, there is an occurrence injurious to the plaintiff, which, in the ordinary course of things, would not take place if the person in control were exercising due care, the occurrence itself, in the absence of explanation by the defendant, affords *prima facie* evidence that there was want of due care." *Id.* This is clearly a case where the doctrine of *res ipsa loquitor* is applicable.

## CONCLUSION

Plaintiff asks that the Court deny the Motion for Summary Judgment.

Respectfully submitted,

**ASHCRAFT & GEREL, LLP**

William F. Mulroney, #04917
10 East Baltimore Street, Suite 1212
Baltimore, Maryland 21202
(410) 539-1122

Attorneys for Plaintiff, Fariece Altice