```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
```

|  |  |
|---|---|
| FARIECE D. ALTICE | : |
|  | : |
| v. | : Civil Action No. DKC 2006-0949 |
|  | : |
| AMF BOWLING CENTERS, ET AL. |  |

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the motion of Defendant AMF Bowling Centers, Inc. for summary judgment. (Paper 24). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion will be denied.

**I. Background**

Plaintiff Fariece Altice's amended complaint for negligence alleges that on November 15, 2004, while bowling at Defendant's bowling alley, "her feet went out from under her" as she released the ball.[1] The complaint further alleges that: (1) Defendant owed a high duty of care to Plaintiff as a business invitee, (*id.* ¶ 13); (2) Defendant breached its duty by causing excess bowling lane oil to be present in the bowler's approach area, (*id.* ¶ 14); and (3) as a result of Defendant's negligence, Plaintiff suffered personal

---

[1] Plaintiff filed suit against both AMF Bowling Centers, Inc. and AMF Bowling Worldwide, Inc. (Paper 19). Only Defendant AMF Bowling Centers, Inc. has moved for summary judgment, (paper 24), and thus references to Defendant in this Memorandum Opinion refer only to AMF Bowling Centers, Inc.

injuries, permanent disability, and substantial medical expenses. (*Id.* ¶ 15).  Plaintiff claims damages in the amount of $500,000. (*Id.* ¶ 16).

The following facts are either undisputed or are construed in the light most favorable to Plaintiff.  In her deposition, Plaintiff testified that she bowled in a league that met at Defendant's bowling alley. (Paper 24, Ex. 2, Altice Dep. at 6-7). She was assigned to lanes 23 and 24 on the day of the incident. (*Id.* at 12).  The league bowled in sets of two teams paired together; with each team bowling on one lane, then on the other team's adjoining lane. (*Id.*).  The bowling alley opened at 9:00 a.m., and Plaintiff began practice at approximately 9:45 a.m. before her game at 10:00 a.m.  Plaintiff testified that, on occasions prior to the incident, the vice president of the league had made announcements before the game that there would be a delay because the lanes were too oily and needed to be cleaned.  There was no such announcement on the morning of the incident. (*Id.* at 43-44).

Plaintiff first bowled on lane 23 without incident, then she moved to lane 24.  She was the first bowler on lane 24, and she did not notice anything unusual on the floor. (*Id.* at 14-15). Plaintiff also did not have any drink or liquid with her, nor did she notice anyone around her with any drink. (*Id.* at 73-74). Immediately prior to the fall, Plaintiff approached the foul line

in her customary fashion.  When she was approximately three to six inches from the foul line, she released the ball, and as she did so, she went up in the air, and fell backwards onto her right side. (*Id.* at 19, 24-25).  She landed near the ball return.  (*Id.* at 27). Plaintiff reached around the floor where she fell and felt something slippery on her hand that she assumed was oil. (*Id.* at 26).  Plaintiff testified that while she felt some oil on the floor with her hand, it was not enough to see on her hand, "just enough to feel."  (*Id.* at 43).  She also could not see any oil on the lane.  (*Id.* at 26).

   Linda Silver was standing in lane 25 watching Plaintiff bowl. (Paper 24, Ex. 3, Silver Dep. at 7, 12).  When Plaintiff fell, Mrs. Silver went to her immediately.  When Mrs. Silver placed her hand on the lane by Plaintiff's head to lean down to see if she was okay, Mrs. Silver felt oil on her hand.  (*Id.* at 20).  Mrs. Silver testified that her hand began to slide when she placed it down, and when she lifted her hand up there was a sticky substance like grease on it.  She went to the bathroom to wash her hand off afterwards. (*Id.* at 33).

   Ahmad Haleem was the lane maintenance technician who oiled the lanes on the day of Plaintiff's incident.  (Paper 24, Ex. 1, Haleem Dep. at 7).  On November 15, 2004, Mr. Haleem came to work at 2:59 a.m., and he testified that "[i]f I came in at 2:59[a.m.], it was 7:59[a.m.] that I would be finished" as it takes 5 hours.  (*Id.* at

36, 46).  According to Mr. Haleem, oil is applied to help propel the ball down the lane. (*Id.* at 15).  He testified that it is applied to the lane, up to an inch or two before the foul line. (*Id.* at 30).  The machine cuts off, and then he pulls it out manually, and moves the machine to the next lane.  (*Id.* at 34). According to his testimony, during the transfer, oil could drip off the machine, but no more than "a couple of drops," smaller than a penny.  (*Id.* at 50; *see also* paper 25, Ex. A, Mejia Dep. at 21-22). After he oils the lanes, Mr. Haleem takes a dry dust mop and cleans the approach area from the foul line back to the area where patrons sit.   (Paper 24, Ex. 1, Haleem Dep. at 42-44).   He distinctly remembers doing this on the day of the incident.  (*Id.* at 45).

**II. Standard of Review**

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir.

1979). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**III. Analysis**

Defendant argues that it is entitled to summary judgment because Plaintiff has not produced evidence sufficient to support her negligence claim that Defendant either: (1) created the dangerous condition, or (2) had actual or constructive notice of the danger.  Plaintiff argues that it is reasonable to infer that Defendant was negligent in causing oil to be in the bowler's approach area, thus creating the danger that caused Plaintiff's injury.  Alternatively, Plaintiff relies on *res ipsa loquitur* to claim that Defendant's negligence caused Plaintiff's injury. Defendant also argues that Plaintiff is precluded from claiming *res ipsa loquitur.*

An operator of a bowling alley, like any proprietor, has a duty to its patrons as business invitees to exercise "ordinary care to maintain . . . [its] premises in a reasonably safe condition." *Giant Food Inc. v. Mitchell*, 334 Md. 633, 636 (1994).[2]  The mere existence of a defect, though, is insufficient to establish liability.  *Ronk v. Corner Kick, Inc.*, 850 F.Supp. 369, 370 (D.Md. 1994) (citation omitted).  The proprietor of a store is not an

---

[2] The incident occurred in Maryland.  As the parties recognize, the law of Maryland governs the substantive legal issues in this diversity action. *Ramos v. S. Md. Elec. Co-op.*, 996 F.2d 52, 54 (4th Cir. 1993).

insurer of the safety of his customers while they are on the premises and no presumption of negligence on the part of the owner arises merely from a showing that an injury was sustained on his premises. *See Rhen v. Westfield Am.*, 153 Md.App. 586, 593 (2003), *cert. denied*, 380 Md. 619 (2004). The Court of Special Appeals of Maryland long ago reiterated that the Court of Appeals of Maryland:

> has cited with approval the view of the Restatement (Second) of Torts § 343, which states that a possessor of land is subject to liability for physical harm caused to his invitees by a condition on his property if he:
> '(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.'

*Keene v. Arlan's Dept. Store of Balt., Inc.*, 35 Md.App. 250, 255 (1977)(citing *Link v. Hutzler Bros.*, 25 Md. App. 586, *cert. denied*, 275 Md. 750 (1975)).

As the Court of Special Appeals has further explained, "there is a distinction to be made between those cases which occur as a result of some overt action by the owner or his employees (waxing or oiling of floors) and those which for convenience have been designated as *foreign object* . . . type of cases." *Keene*, 35 Md.App. at 256 (emphasis added). In the first type, notice, actual or constructive, is usually not an issue because the owner or his employees are alleged to have created the dangerous condition. *Id.;*

*see also, e.g.*, *Chamberlain v. Denny's, Inc.*, 166 F.Supp.2d 1064, 1069 (D.Md. 2001) ("If there is proof that a defendant negligently caused the dangerous condition, a plaintiff does not have to prove notice to prevail . . . .") (citation omitted).

> The evidence is legally sufficient to warrant submission of a case to the jury if it rises above speculation or conjecture, and so affords the rational basis needed for a determination that the defendant was guilty of negligence which produced the accident. A mere surmise that there may have been negligence will not justify the court in permitting the case to go to the jury. *Olney v. Carmichael*, 202 Md. 226, 96 A.2d 37. The burden is upon the customer to show that the proprietor created the dangerous condition or had actual or constructive knowledge of its existence. *Lexington Market Authority v. Zappala*, 233 Md. 444, 197 A.2d 147; *Montgomery Ward & Co. v. Hairston*, 196 Md. 595, 78 A.2d 190.

*Moulden v. Greenbelt Consumer Servs., Inc.*, 239 Md. 229, 232 (1965). If a plaintiff produces evidence sufficient that a reasonable jury could infer that the defendant created the danger, notice is not an issue, but the Plaintiff must also show that the Defendant negligently created the dangerous condition. *See Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md.App. 381, 394-95 (1997); *see also* 1 Dan B. Dobbs, *The Law of Torts* § 235, at 603 (2001).

In *Link*, the Court of Special Appeals ruled that the testimony of the plaintiff and her daughter that she slipped due to excessive wax on the proprietor's floor was sufficient for a reasonable jury to infer that the defendant created the danger "as a result of its negligent application of the floor surfacing material." *Link*, 25

Md.App. at 594. The plaintiff testified that she stepped onto a part of the floor that was shinier than the rest and her foot suddenly slipped. *Id.* at 587. She further testified that her heel dug into the excess wax on the floor; and, her daughter testified that she observed wax on her mother's shoe. *Id.* at 588. In contrast, the store nurse, the porter in charge of floor maintenance, and an expert witness all testified that the last waxing occurred four months before, and that there was no wax on the floor that could have caused the fall at the time of the accident. *Id.* at 588. The court ruled, however, that a reasonable jury could infer from the plaintiff's evidence that the defendant created the dangerous condition of the floor as a result of its negligent floor surfacing. *Id.* at 594. In regard to the sufficiency of the plaintiff's evidence, the court stated the following:

> We think the testimony of the appellant and her daughter sufficient to have taken the case to the jury. Once there, the jury could have disbelieved the nurse, the porter and the expert, and believed the appellant and her daughter, or vice versa. The porter's statement concerning his waxing, application of 'Supertred' and his buffing of the floor was, like the testimony of Mrs. Link and Mrs. Warner, a question of credibility. The fact that the expert testified that his product had a high rating for being skid-free does not indicate that the accident could not have happened in the manner described by appellant and her daughter. The expert's testimony, as we see it, that 'Supertred' dries without a crust or skin, merely contradicts the evidence of the appellant and her daughter, it does not destroy it. Direct evidence in conflict with an inference properly drawable from other

9

>     evidence, does not eradicate the inference. The
>     matter becomes a question of what weight the
>     trier of fact will attribute to each.

*Link,* 25 Md.App. at 594-95 (footnote omitted).

Plaintiff has produced evidence that oil was in the bowler's approach area. This is sufficient evidence for a reasonable jury to infer that Defendant or its agents negligently deposited or failed to remove the oily substance in the bowler's approach area that caused Plaintiff's fall. *See Link*, 25 Md.App. at 594-95. Both the lane maintenance technician, Mr. Haleem, and the facilities manager, Mr. Mejia, testified that a colorless oil could leak from the lane oil machine when the machine was manually transferred from lane to lane. (Paper 24, Ex. 1, Haleem Dep. at 50; paper 25, Ex. A, Mejia Dep. at 21-22). Indeed, they acknowledged that it happens sufficiently frequently that they routinely mop the area after the machine is used. Plaintiff testified that she was the first bowler on lane 24. The bowling alley opened at 9:00 a.m., and the first league games did not start until 10:00 a.m. Plaintiff began practice at 9:45 a.m. She did not have any drink or liquid with her; nor did she notice anyone else with a liquid nearby. (Paper 24, Ex. 2, Altice Dep. at 73-74). Plaintiff and Mrs. Silver testified that they detected a colorless, oily substance near the site of Plaintiff's fall. (Paper 24, Ex. 2, Altice Dep. at 26; paper 24, Ex. 3, Silver Dep. at 20).

10

Defendant has come forward with some evidence that it took ordinary care to maintain its premises in a reasonably safe condition by having a procedure in place to mop up any oil spilled in the bowler's approach area. "Direct evidence in conflict with an inference properly drawable from other evidence, does not eradicate the inference. [Rather] [t]he matter becomes a question of what weight the trier of fact will attribute to each." *Link*, 25 Md.App. at 595. Thus, while evidence of Defendant's mopping procedure tends to contradict Plaintiff's evidence that Defendant's negligence caused the oil to be or allowed the oil to remain on the lane, this evidence merely creates a dispute of material fact. Thus, Defendant is not entitled to judgment as a matter of law on the issue of negligence.[3]

**IV.  Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment will be denied. A separate Order will follow.

 

                    /s/
DEBORAH K. CHASANOW
United States District Judge

---

[3] As Plaintiff has produced evidence sufficient to overcome summary judgment in favor of Defendant on the issue of negligence, this court need not address at this juncture whether Plaintiff can alternatively argue *res ipsa loquitur.*